## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEBRASKA

CARSON P., by his next friend Crystal Foreman;  )
PAULETTE V., by her next friend, Sherri Wheeler;  )
DANIELLE D., by her next friend, Jodell Bruns;  )  Case No. 4:05CV3241
CHERYL H., by her next friend, Susan Nowak; and  )
JACOB P., by his next friend, Sara Jensen, on their  )
own and on behalf of all others similarly situated,  )
)
)
Plaintiffs,  )
)
v.  )
)
DAVE HEINEMAN, as Governor of the State of  )
Nebraska; NANCY MONTANEZ, as Director of  )
Services, Nebraska Department of Health and  )
Human Services; JOANN SCHAEFER, as the  )
Director of Regulation and Licensure, Nebraska  )
Department of Health and Human Services;  )
RICHARD NELSON, as the Director of Finance  )
and Support, Nebraska Department of Health and  )
Human Services; DENNIS LOOSE, as the Chief  )
Deputy Director, Nebraska Department of Health  )
and Human Services; and TODD RECKLING, as  )
the Administrator of the Department of Health and  )
Human Services' Office of Protection and Safety,  )
)
)
Defendants.  )
)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS
## CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................... iii

Preliminary Statement ................................................................................................................. 1

Statement of Background Facts and Legal Issues ......................................................................... 3

    Defendants Are Legally Obligated to Provide For and Protect the Health, Safety, and
    Welfare of All Plaintiffs ........................................................................................................... 3

    Defendants Have Committed, and Continue to Commit, Severe Violations of the Named
    Plaintiffs' Rights ....................................................................................................................... 4

    Defendants Have Committed, and Continue to Commit, Violations of the Rights of Class
    Members .................................................................................................................................... 6

Argument ...................................................................................................................................... 7

I.  THE DEFINITION OF THE CLASS IS SUFFICIENTLY ASCERTAINABLE TO
    PROTECT THE INTERESTS OF THE CLASS MEMBERS ................................................ 7

II.  THIS ACTION MEETS EACH OF THE REQUIREMENTS FOR CLASS
    CERTIFICATION UNDER RULES 23(A) AND 23(B)(2) ................................................... 9

    A.  The Class Meets the Numerosity, Commonality, Typicality, and Adequacy
        Requirements of Rule 23(a) ............................................................................................ 12

      1.  The Plaintiff Class Is So Numerous That Joinder Is Impracticable ............................ 12

      2.  There Are Questions of Law and Fact Common to the Class ...................................... 13

      3.  The Claims of the Named Plaintiffs Are Typical of the Claims of the Plaintiff
         Class ......................................................................................................................... 16

      4.  The Named Plaintiffs Will Adequately Represent the Proposed Class Members ....... 17

    B.  Class Certification Is Warranted Under Rule 23(b)(2) ...................................................... 18

    C.  Plaintiffs' Counsel Fairly and Adequately Represent the Interests of the Plaintiff
        Class and Should Be Appointed Class Counsel ................................................................ 19

Conclusion ................................................................................................................................... 20

# TABLE OF AUTHORITIES

## Supreme Court Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................... 9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................. 5, 9-10

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ...................................................................................... 4

## Other Federal Cases

*B.H. v. Johnson*, 715 F.Supp. 1387 (N.D. Ill. 1989) ...................................................................... 11

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ....................................................................... passim

*Caroline C. v. Johnson*, 174 F.R.D. 452 (D. Neb. 1996) ......................................................... passim

*Carr v. Wilson-Coker*, 203 F.R.D. 66 (D. Conn. 2001) .................................................................. 11

*Coley v. Clinton*, 635 F.2d 1364 (8th Cir. 1980) ..................................................................... 10, 18

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) ..................................................... 13

*Elizabeth M. v. Ross*, No. 8:02CV585, 2005 WL 1206150 (D. Neb. May 11, 2005) ............ passim

*G.L. v. Zumwalt*, 564 F. Supp. 1030 (W.D. Mo. 1983) ............................................................ 11, 18

*Jeanine B. v. Thompson*, 877 F. Supp. 1268 (E.D. Wis. 1995) ................................................ 11, 18

*Juan F. v. Weicker*, 37 F.3d 874 (2d Cir. 1994) ...................................................................... 17-18

*Kenny A. v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003) ............................................................ 11, 18

*L.J. v. Massinga*, 699 F.Supp. 508 (D. Md. 1988) ......................................................................... 11

*LaShawn A. v. Dixon*, 762 F.Supp. 959 (D.D.C. 1991) ........................................................... 11, 18

*Lynch v. Dukakis*, 719 F.2d 504 (1st Cir. 1983) ............................................................................ 11

*Marisol A. v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997) ............................................................. 10, 18

*Olivia Y. v. Barbour*, 351 F. Supp. 2d 543 (S.D. Miss. 2004) ...................................................... 18

*Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982) ............................................. passim

### Federal Statutes, Regulations, Rules

42 U.S.C. § 1396d(r) ........................................................................................... 4

42 U.S.C. §§ 620-29(i) ........................................................................................ 4

42 U.S.C. §§ 670-679(b) ..................................................................................... 4

42 U.S.C. §1396d(a) ........................................................................................... 4

42 USC §§ 1396a ................................................................................................ 4

Fed. R. Civ. P. 23(c)(1)(B) ................................................................................. 19

Fed. R. Civ. P. 23(g) ..................................................................................... 19, 20

Fed. R. Civ. Pro. 23(a) ................................................................................ passim

Fed. R. Civ. Pro. 23(b)(2) ............................................................................ passim

### State Statutes

Neb. Rev. Stat. § 43-247(3)(a)(b) ....................................................................... 4

### Other Authorities

7A *Wright and Miller*, Fed. Prac. and Proc. Civ. 2nd § 1754 ......................................... 9

## Preliminary Statement

Plaintiffs respectfully submit this memorandum in support of their motion for class certification and appointment of class counsel. This action seeks declaratory and injunctive relief to stop ongoing violations of federal rights of foster children in Nebraska, and to ensure that these foster children receive care, protection, treatment, and services as required by the United States Constitution and various federal statutes.

Plaintiffs in this action are all foster children – children who are alleged or adjudicated to have been abused, neglected or otherwise deprived and who have been removed from the legal custody of their biological parents or other caretakers and placed into the custody of the Nebraska Department of Health and Human Services ("HHS"). The defendants are Dave Heineman, in his official capacity as Governor of the State of Nebraska; Nancy Montanez, in her official capacity as Director of Services for HHS; and Joann Schaefer, Richard Nelson, Dennis Loose, and Todd Reckling, all in their official capacities as HHS administrators and members of the HHS "Policy Cabinet" (collectively, "Defendants").

As foster children, the plaintiffs specifically identified[1] in the Complaint (the "Named Plaintiffs") and the similarly-situated class of more than 6,000 Nebraskan foster children they represent (the "Class"; together "Plaintiffs") are entirely dependent on Defendants, who are required by law to provide them with appropriate care, protection, services, and treatment. Although the child welfare program administered by Defendants is supposed to protect these vulnerable children, foster children in Nebraska are instead subjected to further harm and the imminent risk of further harm while in foster care, including from the following acts and failures to act:

---

[1] So as to protect child confidentiality and in accordance with Rule 5.3 of the Local Civil Rules of United States District Court of the District of Nebraska, the names appearing in the complaint for Named Plaintiffs are pseudonyms.

- Defendants' systemic failure to develop and maintain an adequate number and type of foster homes and other placements to meet the needs of Nebraska's foster children. (Compl. ¶¶ 4(a), 5(a), 88-109.)

- Defendants' routine placement of children for excessive stays in emergency shelters and other temporary facilities grossly inappropriate for their long-term care. (Compl. ¶¶ 4(b), 4(c), 99-100.)

- Defendants' systemic failure to provide maintenance payments on behalf of foster children that approach the actual cost of their care. (Compl. ¶¶ 5(f), 104-5.)

- Defendants' systemic failure to appropriately screen and monitor foster homes and other foster care placements. (Compl. ¶¶ 4(c), 117-26.)

- Defendants' systemic failure to provide foster children with the services necessary to address acute mental health problems and other health needs. (Compl. ¶¶ 5(d), 127-33.)

- Defendants' systemic failure to provide foster children with the case management, case plans, and services, including reunification and adoption-related services, required to prevent children from growing up in the State's custody. (Compl. ¶¶ 4(e), 134-53.)

Defendants have long been aware of these and many other ongoing and systemic failures to provide for the safety and well-being of Nebraska's foster children, and the harms to children caused by them, as they have been repeatedly documented in governmental reports, audits and in the media. This action seeks class-wide declaratory and injunctive relief to address these systemic and continuing failures on the part of Defendants to provide legally-required child welfare services to Nebraska's foster children.

Pursuant to Fed. R. Civ. Pro. 23(a) and (b)(2), Plaintiffs seek an order certifying this action as a class action, with the Class defined as: "All foster children who are or will be in the legal custody of HHS, including those alleged or adjudicated to be abused, neglected or abandoned by their parent, guardian or custodian, and those alleged or adjudicated to be wayward, uncontrollable or habitually truant."

-2-

As set forth in this memorandum and the affidavit submitted herewith, this action satisfies all of the requirements for class certification under Rule 23, including the well-known requirements of numerosity, commonality, typicality and adequate representation. *See* Fed. R. Civ. P. 23(a). Thousands of Nebraska's foster children are directly harmed, or have their safety and well-being threatened, each day they remain in state custody. Common issues of law and fact arise in this case because this harm is a direct result of Defendants' uniform, system-wide policies and practices, which violate the federal constitutional and statutory rights of *all* children in the Class. Further, each of the Named Plaintiffs has claims typical of the Class members and will adequately represent these members, since each of the Named Plaintiffs challenges the same systemic deficiencies that give rise to the legal claims of the absent Class members.

For these reasons, as elaborated below, Plaintiffs submit that class certification is appropriate and indeed necessary. Without certification, thousands of Nebraskan foster children will be harmed, or will continue to be at imminent risk of harm, as a result of the policies and practices of Defendants. As such, the Court should act within its discretion and grant Plaintiffs' motion for class certification.

## Statement of Background Facts and Legal Issues

### Defendants Are Legally Obligated to Provide For and Protect the Health, Safety, and Welfare of All Plaintiffs

As is alleged in the Complaint, legal responsibility for assuring the safety of abused and neglected children falls squarely on HHS, and, ultimately, the Governor of the State of Nebraska and the other administrators charged with running it. (Compl. ¶¶ 21-29.) HHS is legally required to provide child welfare services to children who are in state custody because they are abused, neglected, abandoned or otherwise deprived by their parent(s) or other caretaker(s) and

-3-

children who are deemed wayward or uncontrollable or who have or are alleged to have committed status offenses, crimes, such as truancy, that are unlawful only for children. *Cf.* Neb. Rev. Stat. § 43-247(3)(a)(b).

Defendants' specific obligations to Plaintiffs under federal constitutional and statutory law are derived from Plaintiffs' rights under the First, Ninth and Fourteenth Amendments to the United States Constitution; the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. §§ 620-29(i) and 670-679(b), and regulations promulgated thereunder (the "Adoption Assistance Act"); and the Early and Periodic Screening, Diagnosis and Treatment Program of the Medicaid Act, 42 USC §§ 1396a, 1396d(a) and (r), and regulations promulgated thereunder ("EPSDT"). *See also Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982). Plaintiffs also seek to enforce their federal procedural due process rights to the benefits of certain entitlements under the Adoption Assistance Act and the EPSDT provisions, and certain Nebraska state law provisions. And finally, Defendants owe Plaintiffs contractual obligations as they are third-party beneficiaries to Nebraska's Title IV-E State Plan. (*See* Compl. ¶¶ 161-76.)

## Defendants Have Committed, and Continue to Commit, Severe Violations of the Named Plaintiffs' Rights

In each Named Plaintiffs' case, Defendants' conduct reflects systemic violations of some or all of the federal constitutional and statutory rights of Nebraska's foster children. Collectively, the Named Plaintiffs' experiences illustrate and represent the profound systemic failings of Nebraska's foster care system under HHS and the ongoing harms suffered by the Class of children that this action seeks to enjoin.

-4-

For example:[2]

- **Carson P.** is an eight-year-old boy who has been in HHS custody for approximately two years. A victim of sexual abuse and fetal alcohol syndrome, Carson has intense mental and behavioral health needs. Though Carson talks of his desire to harm and even kill people, he was not assessed in any formal manner at or around the time he came into custody, and HHS, to Carson's significant and lasting detriment, has failed to provide appropriate treatment for his various mental and behavioral health problems. (Compl. ¶¶ 42-53.)

- **Paulette V.** is an 18-year-old girl whose journey through Nebraska's foster care system has spanned 12 years. Paulette was removed from her mother's care at age five and has been moved through at least 17 foster care placements since, many of them dangerous and inappropriate to meet her needs. Due to HHS' inadequate screening and monitoring of foster homes, Paulette was abused while in state custody. Paulette has also suffered through extended emergency shelter stays and has been educationally delayed as a result her many moves. (Compl. ¶¶ 54-64.)

- **Danielle D.** is a seven-year-old girl who has spent the majority of her life in state custody and is now more than two years into her second extended stay in foster care. HHS has failed to provide Danielle with the case planning and services needed to move her on to a permanent home. In fact, for much of the last calendar year, Danielle's permanency goal has been "long term foster care," a manifestly inappropriate goal for an adoptable child such as Danielle. Danielle has also been denied sibling visitation during her time in care. (Compl. ¶¶ 65-72.)

- **Cheryl H.** has been in foster care for nine years. Because of HHS' failure to appropriately assess Cheryl's needs and place her in accordance with them and HHS' failure to develop, train and support foster parents capable of meeting the needs of children like her, Cheryl has unnecessarily suffered through more than a dozen placement changes and has spent significant periods of her life in institutional settings. As a result of HHS' failure to provide Cheryl with appropriate treatment and case planning services, Cheryl has also been denied the opportunity for a stable home through adoption or guardianship. Instead, she has been permitted to steadily deteriorate while in state custody. (Compl. ¶¶ 73-77.)

- **Jacob P.** is a 13-year-old boy who has spent nearly half of his life in State custody. Jacob has been shuffled amongst 11 different placements, including five in the last year and a half. HHS has also failed to provide Jacob with the treatment and services necessary for his extensive behavioral problems and treatment needs. Jacob has severe attachment problems due to HHS' failures and has been denied a safe and stable adoptive home. (Compl. ¶¶ 78-85.)

---

[2]   For class certification purposes, a district court must accept the allegations of the complaint as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Caroline C. v. Johnson*, 174 F.R.D. 452, 459 n.7 (D. Neb. 1996).

Each Named Plaintiff identified has suffered harm, continues to suffer harm, and is at risk of suffering future harm as the result of multiple constitutional deprivations and statutory violations, all stemming from Defendants' operation of a poorly organized and managed foster care system that lacks sufficient resources to provide appropriate placements and services for children. Defendants have violated and are violating the constitutional and statutory rights identified above and in the Complaint in the case of one or more of each of the Named Plaintiffs. Accordingly, the Named Plaintiffs are properly representative of the systemic failings of Nebraska's HHS. Indeed, the experiences of the Named Plaintiffs are typical, not exceptional. Just as the Defendants have failed the Named Plaintiff children, they have failed, are failing, and without Court intervention will continue to fail many thousands more Nebraskan foster children.

## Defendants Have Committed, and Continue to Commit, Violations of the Rights of Class Members

Nebraska's child welfare system is permeated with widespread deficiencies and defects that place all putative Class children at risk of harm and result in ongoing and severe violations of their federal statutory and constitutional rights. As is stated more fully in the Complaint:

- *As It Has Been for Many Years, HHS Is Dangerously Understaffed.* HHS is, and has been for many years, severely understaffed and under-resourced. As a consequence, it is not unusual for a caseworker to exercise responsibilities for an excessive number of foster children, often several times the national standard of 12-15 children. Such high caseloads prevent caseworkers from providing even a minimum level of attention to each individual child and translate into high caseworker turnover rates, which only further diminish the quality of care provided to foster children. (*See* Compl. ¶¶ 110-16.)

- *HHS Has Failed and Continues to Fail to Develop Sufficient Safe, Stable and Appropriate Foster Placements for Children.* Children who are placed in the custody of HHS are often denied safe, stable, and appropriate foster placements. HHS engages in a pattern and practice of placing Nebraska's foster children wherever a bed is available, not according to an individual child's needs. The gross lack of appropriate foster homes, coupled with the lack of support services provided by HHS, results in the placement of too many children in institutional

-6-

settings and emergency shelters – often for extended terms. HHS' failure to provide sufficient, safe, and stable placements for Nebraska's foster children also results in children being shuffled among numerous placements, at great cost to their health and well-being. (*See* Compl. ¶¶ 88-102.)

- **HHS Has Failed and Continues to Fail to Provide Necessary Health Services to Foster Children.** HHS fails to provide the services required to meet the physical and mental health needs of the children in their custody. Children with severe behavioral and mental health problems are often denied necessary services based on cost considerations. (*See* Compl. ¶¶ 127-33.)

- **HHS Has Failed and Continues to Fail to Adequately Monitor Child Safety.** HHS fails to adequately screen, monitor, support or visit foster homes, monitor visitation between children and families, and otherwise monitor and ensure the safety of children in foster care. As a result, foster children in Nebraska too often suffer further maltreatment while in state custody. (*See* Compl. ¶¶ 117-26.)

- **HHS Has Failed and Continues to Fail to Provide Foster Children With Permanent Homes.** HHS does not provide foster children with the case management, case plans, and services, including reunification and adoption-related services, required to prevent children from growing up in the State's custody. (*See* Compl. ¶¶ 134-53.)

Plaintiffs have commenced this action to stop these and other systemic legal violations and the harms to foster children that are directly caused by them. These violations do not merely affect the Named Plaintiffs; they affect all members of the Class. Plaintiffs seek system-wide declaratory and injunctive relief to stop these violations and to ensure Defendants' compliance with their constitutional and federal statutory obligations.

## **Argument**

## I. THE DEFINITION OF THE CLASS IS SUFFICIENTLY ASCERTAINABLE TO PROTECT THE INTERESTS OF THE CLASS MEMBERS.

Although Rule 23 does not specifically mention class definition, "the definition of the class is an essential prerequisite to maintaining a class action." *Caroline C. v. Johnson*, 174 F.R.D. 452, 459 (D. Neb. 1996) (citing *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir. 1976)). For certification, the class definition must be "capable of ascertainment under some

-7-

objective standard" and not be "defined so broadly that it encompasses individuals with little connection to the claims at issue." *Id.* Further, classes including future members are "regularly certified," especially where those future members are "persons who will be subject to a policy or practice that may in the future subject them to harm." *Elizabeth M. v. Ross*, No. 8:02CV585, 2005 WL 1206150 at \*4 (D. Neb. May 11, 2005). That all class members have suffered *actual* harm is not required, provided that "class members are *subject to* the same harm." *Caroline C.*, 174 F.R.D. at 461 (citing *Baby Neal v. Casey*, 43 F.3d 48, 53-65 (3d Cir. 1994) (emphasis added)).

Here, as in *Caroline C.* and *Elizabeth M.*, Plaintiffs have set forth a limited class definition, consisting of: "All foster children who are or will be in the legal custody of HHS, including those alleged or adjudicated to be abused, neglected or abandoned by their parent, guardian or custodian, and those alleged or adjudicated to be wayward, uncontrollable or habitually truant." (Compl. ¶ 31.) The Class is easily ascertainable as there is no difficulty in determining which children are foster children in the legal custody of HHS. For example, there is no problem distinguishing between children in the Class, who have come or will come into HHS' legal custody because they have been abused, neglected or otherwise deprived by their parents or because their parents are unable to control them, and children taken into the legal custody of HHS' Office of Juvenile Services because of their (alleged or actual) commission of delinquent acts.

Moreover, though the Class includes future members, as in *Caroline C.*, those future members will be subject to HHS' same harmful policies and practices. *Caroline C.*, 174 F.R.D. at 461. The class definition is sufficiently limited, and as such, Plaintiffs have met this

-8-

prerequisite.

## II.   THIS ACTION MEETS EACH OF THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULES 23(A) AND 23(B)(2).

The widespread, pervasive, and systemic nature of the violations at issue here makes it appropriate – indeed imperative – for the Court to certify this action as a class action. Fed. R. Civ. P. 23 provides for certification of a lawsuit as a class action if the four prerequisites of Rule 23(a) and one of the prerequisites of Rule 23(b) are satisfied.[3] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Paxton v. Union National Bank*, 688 F.2d 552, 559, 562 (8th Cir. 1982); *Caroline C.*, 174 F.R.D. at 458-59. The four prerequisites for a class action under Rule 23(a) are:

- (i)    the class is so numerous that joinder of all members is impracticable;

- (ii)   there are questions of law or fact common to the class;

- (iii)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

- (iv)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). According to Rule 23(b)(2), certification is proper if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

In determining whether class certification is warranted, a district court must accept the allegations of the complaint as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

---

[3]    Rule 23 is designed (i) to encourage the efficient resolution of the claims or liabilities of numerous individuals in a single action, (ii) to eliminate repetitious litigation and potentially inconsistent adjudications involving common questions, related events, and similar requests for relief, and (iii) to establish an effective procedure for those individuals whose economic position makes it difficult to vindicate their rights in separate lawsuits. 7A *Wright and Miller*, Fed. Prac. and Proc. Civ. 2nd § 1754.

The determination of class certification is independent of any inquiry into the merits of a plaintiff's claims: "[N]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Id.* at 177. *See also Caroline C.*, 174 F.R.D. at 459 ("The Court may not consider the factual merits or weaknesses of plaintiffs' underlying claims.").

Courts in the Eighth Circuit and the District of Nebraska have repeatedly certified classes under Fed. R. Civ. P. Rule 23(a) and (b)(2) in cases alleging systemic violations of federal constitutional and statutory law. *See, e.g., Paxton*, 688 F.2d at 559-63 (certifying classes of employees subject to race discrimination by virtue of employer's promotion and discharge practices); *Coley v. Clinton*, 635 F.2d 1364, 1366, 1377-78 (8th Cir. 1980) (certifying class of former inmates of state mental hospital); *Caroline C.*, 174 F.R.D. at 468 (certifying class of all women sexually assaulted at a mental health facility and all women who are, or will be in the future, residents of such facility); *Elizabeth M.*, 2005 WL 1206150 at *4-9 (certifying class of current and future female residents of HHS mental health facilities).

Moreover, there are numerous cases in other jurisdictions where class certification has been granted in similar lawsuits challenging systemic violations of children's rights under the United States Constitution and federal statutory law. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2nd Cir. 1997) (finding district court did not abuse its discretion by certifying two subclasses defined respectively as "children who are or will be in the custody of the New York City Administration for Children's Services ('ACS')," and "those children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is or should be known

-10-

to ACS," in a lawsuit challenging systemic violations of children's rights by New York City's child welfare system); *Baby Neal v. Casey*, 43 F.3d 48, 54 (3d Cir. 1994) (reversing denial of class certification for Rule 23(b)(2) classes consisting of "all children in Philadelphia who have been abused or neglected and are or should be known to the Philadelphia Department of Human Services," and those children in the custody of the Philadelphia Department of Human Services); *Lynch v. Dukakis*, 719 F.2d 504, 506 n.1 (1st Cir. 1983) (affirming certification of a class consisting of "[a]ll children subject to protective intervention by agencies of the Commonwealth of Massachusetts under the foster family home care system . . . ," in lawsuit challenging systemic violations of children's rights by Massachusetts' child welfare system); *Kenny A. v. Perdue*, 218 F.R.D. 277, 305 (N.D. Ga. 2003) (certifying class and subclass, defined respectively as "[a]ll children who have been, are, or will be alleged or adjudicated deprived who (1) are or will be in the custody of any of the State Defendants; and (2) have or will have an open case in Fulton County DFCS or DeKalb County DFCS," and "[a]ll children in the Class who are African-American and who have had, or are subject to the risk of having, their adoption delayed or denied on the basis of their race or color").[4]

---

4       *See also Carr v. Wilson-Coker*, 203 F.R.D. 66, 76 (D. Conn. 2001) (certifying a "subclass consisting of all children in Connecticut who are now or will be eligible for Medicaid managed care" benefits); *Jeanine B. v. Thompson*, 877 F. Supp. 1268, 1288 (E.D. Wis. 1995) (certifying class, with two subclasses, consisting of "(1) children who are in foster care custody in Milwaukee County and who come into foster care custody in Milwaukee County; and (2) children who are not in foster care custody in Milwaukee County, but about whom the County Department of Human Services has received reports of abuse or neglect, and children who become the object of such reports," in lawsuit challenging systemic violations of children's rights by Milwaukee's child welfare system); *LaShawn A. v. Dixon*, 762 F.Supp. 959 (D.D.C. 1991), *aff'd in relevant part*, 990 F.2d 1319 (D.C. Cir. 1993) (deciding claims of previously certified class of all children who are in foster care under the supervision of the District of Columbia Department of Human Services, and children who are known to the Department because of reported abuse, in lawsuit challenging systemic violations of children's rights by the District of Columbia's child welfare system); *B.H. v. Johnson*, 715 F.Supp. 1387, 1389 (N.D. Ill. 1989) (deciding claim of previously certified class consisting of "all persons who are or will be in the custody of the Illinois Department of Children and Family Services and who have been or will be placed somewhere other than with their parents" in lawsuit challenging systemic violations of children's rights by Illinois' child welfare system); *L.J. v. Massinga*, 699 F.Supp. 508, 510 (D. Md. 1988) (approving class-wide settlement for class of children defined as those "who are, have been, or will be placed in foster homes by the BCDSS [Baltimore City Department of Social Services] and are or will be placed in the custody of the BCDSS through voluntary placement or court order," in case challenging practices of the Baltimore City Department of Social Services); *G.L. v. Zumwalt*, 564 F. Supp. 1030, 1031 (W.D. Mo. 1983) (class-

-11-

Plaintiffs in this case seek certification of a Class consisting of "all foster children who are or will be in the legal custody of HHS, including those alleged or adjudicated to be abused, neglected or abandoned by their parent, guardian or custodian, and those alleged or adjudicated to be wayward, uncontrollable or habitually truant." (Compl. ¶ 31.) Similar classes have been consistently certified and, in fact, when class certification was denied in a similar child welfare case, the Third Circuit held that it was an abuse of discretion not to certify the putative class. *Baby Neal*, 43 F.3d at 65. Indeed, the District of Nebraska agreed with, and has adopted, the Third Circuit's reasoning in that case. *See Caroline C.*, 174 F.R.D. at 460-61. Accordingly, this case, too, should be certified under Rule 23(a) and (b)(2).

## A.     The Class Meets the Numerosity, Commonality, Typicality, and Adequacy Requirements of Rule 23(a).

Plaintiffs easily satisfy each of the four prerequisites to class certification under Rule 23(a).

### 1.     The Plaintiff Class Is So Numerous That Joinder Is Impracticable.

Rule 23(a)(1) requires that the class be sufficiently numerous as to make it impracticable to bring all the class members before the court without incurring great delay or other inconvenience. Fed. R. Civ. P. 23(a)(1). To satisfy the numerosity prong, a plaintiff must show that joinder is impracticable, not impossible. *Caroline C.*, 174 F.R.D. at 462. No arbitrary number satisfies the numerosity requirement, but "where the class is very large – for example numbering in the hundreds – joinder will be impracticable." *Id.* at 462-63. *See also Paxton*, 688 F.2d at 559-60. Moreover, where unknown persons, or future class members, are involved in the

wide settlement on behalf of "children in the custody of the Jackson County office of the Missouri Division of Family Services," in suit challenging the systemic failures of that system); *Wilder v. Bernstein*, 499 F. Supp. 980, 992 (S.D.N.Y. 1980) (certifying class of "all those New York City children who are black, and who are Protestant, of other non-Catholic or non-Jewish faiths, or are of no religion, and are in need of child-care services outside their home," in case alleging system-wide racial and religious discrimination in foster care placements by New York City).

case, joinder is presumptively impracticable. *Elizabeth M.,* No. 8:02CV585, 2005 WL 1206150 at *6.

In the instant case, the numerosity requirement is clearly met. Plaintiffs allege that there are currently more than 6,000 foster children in the legal custody of HHS. (Compl. ¶ 3). Although the number of members in a proposed class is not determinative, *Paxton,* 688 F.2d at 559-60, the size of the Class, in this case, is more than sufficient to satisfy the numerosity requirement. In addition, it would be impracticable to require each child in the proposed Class to individually litigate his or her claim that the Defendants' systemic failures and arbitrary actions subject him or her to an imminent risk of harm, including procedural and substantive due process, equal protection, and federal statutory violations. *Caroline C.,* 174 F.R.D. at 463 ("Potential lack of knowledge and sophistication of the Class members place them in a poor position to seek legal redress individually.").

Plaintiffs have thus satisfied the numerosity requirement.

## 2.    There Are Questions of Law and Fact Common to the Class.

Rule 23(a)(2) requires that there be questions of law or fact common to the proposed class. The test for commonality is not demanding, and does not require that every question of law or fact be common to every member of the class. *Paxton,* 688 F.2d at 561. Commonality is instead generally demonstrated where – as here – "the course of conduct giving rise to a cause of action affects all class members." *Elizabeth M.,* 2005 WL 1206150 at *6. *See also DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995) (commonality requirement is satisfied when "the legal question 'linking the class members is substantially related to the resolution of the litigation'"). In fact, where plaintiffs are not seeking individualized damage awards but instead only injunctive relief, such actions "by their very nature" satisfy the commonality

-13-

requirement. *Caroline C.*, 174 F.R.D. at 464.

Plaintiffs here allege that systemic deficiencies in HHS' foster care system – including dangerously high caseloads, inadequate staffing, an insufficient number and array of foster homes and other placement options, and the lack of necessary medical, dental, and mental health services – have resulted and continue to result in severe harms to Class members and constitute violations of the Class members' federal statutory and constitutional rights. There are numerous questions of fact common to all members of the Class, including:

- whether Defendants fail to provide foster children in their custody with safe, stable and appropriate foster care placements, as required by law and reasonable professional standards;

- whether Defendants fail to provide foster children in their custody with legally required safety, protection and services necessary to prevent them from deteriorating physically, psychologically, emotionally, or otherwise, while in state custody;

- whether Defendants fail to provide appropriate and timely permanency planning and services for children in foster care to assure that they are properly cared for and either safely reunited with their families or freed for adoption and promptly placed in another permanent home, consistent with applicable law and reasonable professional standards; and

- whether Defendants fail to provide foster children in their custody with the opportunity to maintain critical family relationships, including through visitation with their siblings.

(*See* Compl. ¶ 34.)

Likewise, there are number of questions of law common to all Class members. Common questions of law include at least the following:

- whether Defendants' actions and inactions violate foster children's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to be safe from harm while in state custody;

-14-

- whether Defendants' actions and inactions violate foster children's rights under the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, and relevant federal regulations, to mandated foster care and adoption services and foster care maintenance payments;

- whether Defendants' actions and inactions violate foster children's rights under the Early and Periodic Screening, Diagnosis and Treatment program of the Medicaid Act, and relevant federal regulations;

- whether Defendants' actions and inactions violate foster children's rights to familial association under the First, Ninth and Fourteenth Amendments to the United States Constitution and

- whether Defendants' actions and inactions breach contractual rights enjoyed by Plaintiffs as third-party beneficiaries to Nebraska's State Plan contracts with the federal government.

(*See* Compl. ¶ 35.)

Because it is directly on point, and has been relied upon by this Court, the Third Circuit's decision in *Baby Neal* is particularly instructive. *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994). In that case, the plaintiffs were foster children in Philadelphia alleging systemic deficiencies that interfered with the provision of child welfare services as required by the Constitution, federal and state law – deficiencies very similar to those alleged by Plaintiffs here. *Id.* at 52. The Third Circuit determined that "[i]nsofar as the children challenge the scheme for the provision of child welfare services, their claims share a common legal basis." *Id.* at 61. As "the commonality standard requires only that a putative class share either the injury or the immediate threat of being subject to the injury," the Third Circuit held that the plaintiffs in *Baby Neal* had plainly satisfied the commonality requirement. *Id.* at 60, 62.

The same result should obtain here. Common questions of fact and law, as described above, run throughout the Class members' individual cases. And here, as in *Baby Neal*,

-15-

Plaintiffs are "challenging common conditions and practices under a unitary regime," and are "subject to the risk that they [would] suffer from the same deprivations resulting from the [child welfare agency's] alleged violations." *Id.* As such, the commonality requirement is met.

### 3. The Claims of the Named Plaintiffs Are Typical of the Claims of the Plaintiff Class.

Rule 23(a)(3) requires that the claims of the plaintiffs be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Like commonality, the burden of showing typicality "is not an onerous one." *Paxton*, 688 F.2d at 562. Typicality focuses on the similarity between the Named Plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent. *Id. See also Caroline C.*, 174 F.R.D. at 464-65 ("The burden [of typicality] is met as long as other members of the class possess claims similar to those of the named plaintiffs."). If the Named Plaintiffs' claims arise from the same course of conduct as the class claims, "factual variations in the individual claims will not normally preclude class certification." *Caroline C.*, 174 F.R.D. at 465.

Plaintiffs here advance the same legal and remedial theories as those of the putative Class members, and Plaintiffs' claims arise from Defendants' similar pattern and practice of conduct. The Named Plaintiffs, for example, allege violations of their substantive and procedural due process rights and federal statutory rights under the Adoption Assistance Act and the EPSDT provisions of Medicaid, as do the putative Class members. And the Named Plaintiffs challenge the same system-wide policies and practices giving rise to the legal claims of the Class members.

Although each Named Plaintiff has not suffered precisely the same harms suffered by putative Class members, each Plaintiff, whether named or unnamed, is a victim of, or at risk of harm from the failures and deficiencies systemic in, the foster care program operated by HHS.

-16-

Because the grievances, claims, and relief sought by the Named Plaintiffs are similar, if not identical to, the grievances, claims, and relief sought by the unnamed Class members, the typicality requirement is met.

## 4. The Named Plaintiffs Will Adequately Represent the Proposed Class Members.

Rule 23(a)(4) requires that the Named Plaintiffs and their counsel fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). Where there is no indication that the interests of the named plaintiffs are antagonistic to the class' interests, this test is met. *Paxton*, 688 F.2d at 562-63. *See also Caroline C.*, 174 F.R.D. at 466 (holding that Rule 23(a)(4) requirement is met where it is "unlikely that [Class members and Named Plaintiffs] goals and viewpoints will diverge"). Further, plaintiffs' counsel provide adequate representation where they have the qualifications and experience necessary to vigorously conduct the litigation on behalf of named and unnamed plaintiffs alike. *Paxton*, 688 F.2d at 562-63.

The Named Plaintiffs in this action satisfy the adequacy requirement for representation of the Class. The Named Plaintiffs have not asserted personal claims seeking individual relief, such as damages, different from the requested class-wide relief. Instead, they seek broad declaratory and injunctive relief ordering HHS to effect systemic reforms that will provide all Class members with the protection, care, treatment, and services to which each child is legally entitled. (*See* Compl. pp. 55-56.)

Further, Plaintiffs have retained experienced and competent counsel to protect the interests of the Class. Plaintiffs are represented by attorneys associated with two advocacy organizations, Children's Rights[5] and the Nebraska Appleseed Center for Law in the Public

---

[5] Children's Rights is a privately funded, non-profit organization with extensive experience in complex class action litigation involving child welfare systems. Attorneys at Children's Rights have represented foster children in class actions around the nation. *See, e.g., Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994); *Juan F. v. Weicker*, 37

Interest,[6] as well as the law firms of Ogborn, Summerlin & Ogborn, P.C.; DLA Piper Rudnick Gray Cary US LLP; Cline, Williams, Wright, Johnson & Oldfather, L.L.P.; Woods & Aitken LLP; Gross & Welch, P.C., L.L.O., all with highly relevant experience in complex class action litigation. (*See* Affidavit of Marcia Robinson Lowry, sworn to September 16, 2005 (the "Lowry Aff."), ¶ 3.)

In view of this sizable, experienced, and well-resourced legal team, Named Plaintiffs and their counsel have satisfied the adequacy requirement for certification of the Plaintiff Class.

## B.     Class Certification Is Warranted Under Rule 23(b)(2)

In addition to satisfying the four prerequisites of Rule 23(a), the proposed class must satisfy the prerequisites of Rule 23(b)(2). Rule 23(b)(2) requires that the opposing party's conduct or refusal to act must be "generally applicable" to the class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement is almost automatically satisfied in actions primarily seeking injunctive relief. *See Coley v. Clinton*, 635 F.2d at 1378 (Rule 23(b)(2) "must be read liberally in the context of civil rights suits"); *Baby Neal*, 43 F.3d at 58, 64 (the "writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations"). *See also Caroline C.*, 174 F.R.D. at 467 (citing *Baby Neal* and holding that requirements of 23(b)(2) are met where plaintiffs seek only injunctive and declaratory relief). Moreover, where the plaintiffs seek to "redefine the relationship between the

---

F.3d 874 (2d Cir. 1994); *Olivia Y. v. Barbour*, 351 F. Supp. 2d 543 (S.D. Miss. 2004); *Kenny A. v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003); *Brian A. v. Sundquist*, 149 F. Supp.2d 941 (M.D. Tenn. 2000); *Marisol A. v. Giuliani*, 929 F. Supp. 662 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997); *Jeanine B. v. Thompson*, 877 F. Supp. 1268 (E.D. Wisc. 1995); *LaShawn A. v. Dixon*, 762 F. Supp. 959 (D.D.C. 1991), *aff'd in relevant part*, 990 F.2d 1319 (D.C. Cir. 1993); *Wilder v. Bernstein*, 645 F. Supp 1292 (S.D.N.Y. 1986), *aff'd*, 848 F.2d 1338 (2d Cir. 1988); *G.L. v. Zumwalt*, 564 F. Supp. 1030 (W.D. Mo. 1983).

6       The Nebraska Appleseed Center for Law in the Public Interest is a non-profit, non-partisan law project based in Lincoln, Nebraska and has extensive experience in complex welfare and Medicaid class actions.

-18-

defendants and the entire class, certification under Rule 23(b)(2) is appropriate." *Caroline C.*, 174 F.R.D. at 467.

As detailed above, the Named Plaintiffs are seeking relief from systemic failures by the Defendants to provide a range of legally mandated placements and services which are critical to the safety and well-being of children in Nebraska's foster care system. These failures generally affect all members of the Class, and the declaratory and injunctive relief sought is intended to have class-wide scope and effect. Plaintiffs' "Prayer for Relief" specifically requests final declaratory and injunctive relief to enjoin ongoing, systemic violations of the rights of all foster children in the Nebraska HHS's legal custody, and to ensure that these children receive the protection, care, treatment, and services required under the law. (*See* Compl. pp. 55-56.)

Under the lenient standard and facts presented, the requirements of Rule 23(b)(2) are easily satisfied here.

**C.      Plaintiffs' Counsel Fairly and Adequately Represent the Interests of the Plaintiff Class and Should Be Appointed Class Counsel.**

Rule 23(c)(1)(B) requires that "[a]n order certifying a class action must define the class and the class claims, issues or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making its determination in this regard, the Court is guided by four statutory considerations: (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the present action," (3) "counsel's knowledge of the applicable law," and (4) "the resources counsel will commit to representing the class." Fed. R. Civ. P.

-19-

$23(g)(1)(C)$.

Plaintiffs' assembled counsel will fairly and adequately represent the interests of the putative Class. First, Plaintiffs' counsel have identified and thoroughly investigated all claims in this action over an approximately two-year period. (Lowry Aff. ¶ 6.) Second, as set forth above, Plaintiffs have retained experienced and competent counsel who have extensive experience litigating complex class actions and similar claims seeking child welfare reform as in the present action. (*Id.* ¶ 4.) Third, Plaintiffs' counsel have a comprehensive knowledge of the applicable law, based both on current legal research and on the experience of attorneys from Children Rights who have served as class counsel on many of the major child welfare litigations in this country. (*Id.* ¶ 5.) And, fourth, Plaintiffs' counsel have committed sufficient resources to prosecute this action in a thorough and expeditious manner, having assembled a strong and well-resourced legal team. (*Id.* ¶ 3.)

Plaintiffs' counsel clearly satisfy the standard for appointment of class counsel supplied by Rule $23(g)(1)(B)$ and (C).

## Conclusion

This case satisfies all of the prerequisites to class certification under Fed. R. Civ. P. 23(a) and 23(b)(2). Accordingly, pursuant to Rule 23, Plaintiffs respectfully request that this Court exercise its substantial discretion and enter an order certifying this action as a class action for all purposes, with the Class defined as: "All foster children who are or will be in the legal custody of HHS, including those alleged or adjudicated to be abused, neglected or abandoned by their parent, guardian or custodian, and those alleged or adjudicated to be wayward, uncontrollable or habitually truant."

Plaintiffs' counsel further requests an order appointing them as class counsel pursuant to

Rule 23(g).

Dated: September 19, 2005

Respectfully submitted,

By: _____

MARCIA ROBINSON LOWRY (pro hac vice pending)
IRA P. LUSTBADER (pro hac vice pending)
DOUGLAS C. GRAY (pro hac vice pending)
TARA S. CREAN (pro hac vice pending)
CHILDREN'S RIGHTS
404 Park Avenue South, Eleventh Floor
New York, New York 10016
Phone: (212) 683-2210
Facsimile: (212) 683-4015

By: _____

D. MILO MUMGAARD (Bar No. 19919)
JENNIFER A. CARTER (Bar No. 22819)
NEBRASKA APPLESEED CENTER FOR LAW
   IN THE PUBLIC INTEREST
941 'O' Street, Suite 105
Lincoln, NE 68508-3626
Phone: (402) 438-8853
Facsimile: (402) 438-0263

By: _____

V. GENE SUMMERLIN (Bar No. 19611)
MARNIE A. JENSEN (Bar No. 22380)
OGBORN, SUMMERLIN & OGBORN, P.C.
210 Windsor Place
330 South Tenth Street
Lincoln, NE 68508
Phone: (402) 434-8040
Facsimile: (402) 434-8044

-21-

By: ~~Stanley J. Adelman~~

STANLEY J. ADELMAN (pro hac vice pending)
ANNE C. AUTEN (pro hac vice pending)
DLA PIPER RUDNICK GRAY CARY US LLP
203 North LaSalle Street
Chicago, Illinois 60601
Phone: (312) 368-4095
Facsimile: (312) 236-7516

**OF COUNSEL:**

KEVIN COLLERAN (Bar No. 10740)
CLINE, WILLIAMS, WRIGHT, JOHNSON & OLDFATHER, L.L.P.
1900 U. S. Bank Building
233 S. 13th Street
Lincoln, NE 68508
Phone: (402) 474-6900

EDWARD H. TRICKER (Bar No. 15504)
WOODS & AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508
Phone: (402) 437-8500

THOMAS A. GRENNAN (Bar No. 15675)
GROSS & WELCH, P.C., L.L.O.
1500 Omaha Tower
2120 South 72nd Street
Omaha, Nebraska 68124-2342
Phone: (402) 392-1500